85 N.J. Super. 591 (1964)
205 A.2d 478
STATE OF NEW JERSEY (BOROUGH OF HADDON HEIGHTS), PLAINTIFF,
v.
WILLIAM A. STOCKL, JAMES B. RICHARDS AND WILLIAM A. HOLZWORTH, DEFENDANTS.
Superior Court of New Jersey, Camden County Court, Law Division.
Decided December 7, 1964.
*592 Mr. Walter T. Wolf for plaintiff (Messrs. Cobbin, Farr & Reifsteck, attorneys).
Mr. Frank W. Thatcher for defendants (Mr. Joseph R. Moss, attorney).
PASCOE, J.C.C.
Defendants, duly licensed by the New Jersey Real Estate Commission as real estate brokers and real estate salesmen, were convicted in the municipal court for violation of a borough ordinance requiring the licensing of *593 persons engaged in soliciting or canvassing. Defendants' appeal proceeded de novo on a written stipulation of facts.
It is admitted the defendants were soliciting or canvassing from door-to-door, as defined in the ordinance; however, their conduct was for real estate purposes. They have alleged exemption from the ordinance by reason of N.J.S.A. 40:52-1 which provides in part:
"Nothing in this chapter contained shall be construed to authorize or empower the governing body of any municipality to license or regulate any person holding a license or certificate issued by any department, board, commission, or other agency of the State; provided, however, that the governing body of a municipality may make, amend, repeal and enforce ordinances to license and regulate real estate auctioneers or real estate brokers engaged in selling at auction and their business as provided in this section despite the fact that such real estate auctioneers or brokers may be licensed by the New Jersey Real Estate Commission and notwithstanding the provisions of this act or any other act."
Since defendants hold broker and salesmen licenses issued by the New Jersey Real Estate Commission pursuant to N.J.S.A. 45:15-1 et seq. they contend they come within the afore-mentioned reservation and are exempt from the provisions of the borough's ordinance.
The plaintiff, on the other hand, contends that the ordinance in question regulating and licensing solicitors and canvassers was adopted pursuant to R.S. 40:48-2 as an exercise of the general police power broadly granted by that statute permitting a municipality to regulate matters of purely local concern. The court agrees, noting, however, that there is no contradiction between the two statutes. N.J.S.A. 40:52-1 does not authorize a municipality to license all businesses but only those described therein. Soliciting or canvassing does not come within its descriptions. Moyant v. Paramus, 30 N.J. 528 (1959); Salomon v. Jersey City, 12 N.J. 379 (1953); Weiner v. Borough of Stratford, County of Camden, 15 N.J. 295 (1954); Borough of Belmar v. Berube, 63 N.J. Super. 69 (Cty. Ct. 1960).
*594 The plaintiff further states that since this ordinance is passed pursuant to R.S. 40:48-2 it can regulate the defendants, not in their capacity as licensees of the Real Estate Commission, which admittedly it is without power to do, but as individuals engaged in the business of canvassing or soliciting. This being a matter of purely local concern, it can be regulated in the due exercise of its police power. The plaintiff concludes, therefore, that contrary to the defendants' assertion, there is no real conflict between the State's inherent power to regulate and the power delegated to the municipality.
Initially it should be noted that whether declared by the ordinance or, as in the case at bar, readily implied by a reading of its provisions, the purpose of such municipal legislation is the prevention of crime and dishonest business practices. Justice Hall stated in Moyant v. Paramus, supra:
"There can be no doubt that the business of soliciting and convassing is a proper subject for regulation under the police power, as is peddling, and has been so considered for generations. The way in which the business is necessarily conducted opens the way for fraud, deceit and dishonest dealing by the unscrupulous, even though by only a minority of those engaged in it, with redress difficult or practically impossible since the solicitor is very frequently a stranger and quickly gone from the locality. Resort may also be easily had to the business by the criminally minded for the purpose of obtaining admittance to private homes in furtherance of some present or future unlawful object. 40 Am. Jur., ibid., § 7, p. 912. Courts have universally upheld the amenability of the business to reasonable police regulations. Town of Irvington v. Schneider, 120 N.J.L. 460 (Sup. Ct. 1938), affirmed 121 N.J.L. 542 (E. & A. 1939), reversed on other grounds Schneider v. State of New Jersey, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939); Dziatkiewicz v. Township of Maplewood, 115 N.J.L. 37 (Sup. Ct. 1935); 7 McQuillin, Municipal Corporations (3d ed. 1949), § 24.378; Rhyne, Municipal Law (1957), § 26-44; 40 Am. Jur., ibid., § 16, p. 921. Registration and licensing are commonly accepted as such reasonable regulatory means since they require identification of the solicitor which will deter the dishonest and aid future location of the person if that be necessary. 40 Am. Jur., ibid., § 30, p. 938; Rhyne, ibid., § 26-48."
Accordingly, an examination of the ordinance reveals that it comprehensively presents a means of (a) identifying, for present and future reference, strangers in the community; *595 (b) determining their purpose for being there; (c) establishing whether their character and business responsibility are such that they are sufficiently reputable to enter the homes of local residents. Furthermore, by providing for the denial or revocation of a license in certain instances, as well as penalties for violation of any of the provisions of the ordinance, dishonest business practices tend to be deterred.
At this point it would be wise to present in substance the ordinance in question, No. 343 of the Borough of Haddon Heights.
The ordinance makes it unlawful for any solicitor or canvasser to engage in such business within the borough without first obtaining a license. The solicitor or canvasser must complete a license application which provides the chief of police with detailed information regarding the applicant's employment relationship, what he wishes to sell, his personal description, residence, character and business responsibility.
A fee of $10 is paid at the time the application is filed to cover the cost of investigating the information contained therein. A licensee must wear a badge identifying him as such. A license may be revoked for false representations contained in the application or made while soliciting, as well as for conviction of a crime involving moral turpitude or for conducting his business in such a way as to constitute a menace to the safety or general welfare of the public. No license is required of any person exempt from the ordinance by New Jersey law. A fine or imprisonment, or both, is the penalty for violating any provisions of the ordinance.
It is apparent from reading N.J.S.A. 45:15-1 et seq., the Real Estate Brokers and Salesmen Act, that the Legislature has enacted a statute which, inter alia, deals with the exact same subject and accomplishes the same purposes as ordinance No. 343 when both enactments are applied to the facts of the case at bar. N.J.S.A. 45:15-1 states:
"No person shall engage either directly or indirectly in the business of a real estate broker or salesman, temporarily or otherwise, and no person shall advertise or represent himself as being authorized to act *596 as a real estate broker or salesman, or to engage in any of the activities described in section 45:15-3 of the Revised Statutes, without being licensed so to do as hereinafter provided." (Emphasis added)
R.S. 45:15-2 provides:
"Any single act, transaction or sale shall constitute engaging in business within the meaning of this article." (Emphasis added)
The court is convinced that whatever "real estate purposes" defendants were "soliciting or canvassing" for, are within the ambit of N.J.S.A. 45:15-3 which lists the activities in which a person may not engage without the license required by N.J.S.A. 45:15-1, more specifically,
"* * * to solicit for prospective purchasers * * *."
N.J.S.A. 45:15-15 is pertinent.
"The annual fee for each real estate broker's license shall be twenty dollars ($20.00), and the annual fee for each real estate salesman's license shall be ten dollars ($10.00). Each license granted under this article shall entitle the licensee to perform all of the acts contemplated herein during the period for which the license is issued, without payment of any fee other than the annual fee for such license. * * *" (Emphasis added)
Applicants must fill out a license application and, in meeting certain requirements, "shall furnish evidence of good moral character." N.J.S.A. 45:15-9. Before a license can be granted, the applicant must demonstrate, by examination, a knowledge of the subject matter of his occupation. R.S. 45:15-10. Certain classes of individuals receive special consideration. N.J.S.A. 45:15-4, 11, 11.1, 11.2. Who are such licensees and their whereabouts can be readily ascertained. N.J.S.A. 45:15-12, 13, 14, 20, 21, 22. A license cannot be issued when an applicant has been convicted of offenses involving fraud within five years prior to his application. N.J.S.A. 45:15-12.1. Renewals may be denied by the Commission *597 within its discretion for good cause shown. N.J.S.A. 45:15-15.
The Commission may upon its own motion and must upon a written verified complaint investigate the actions of any real estate broker or salesman, or any person assuming to act in either capacity within this State. N.J.S.A. 45:15-17. Where the Commission deems a licensee guilty, while performing or attempting to perform any acts permitted by the statute, of any conduct or action outlined by a very extensive, broadly worded list, his license may be suspended or revoked. R.S. 45:15-17. A conviction of certain offenses requires a mandatory revocation, N.J.S.A. 45:15-19.1, and an indictment for any of the same offenses may result in a license suspension pending the trial of such indictments. N.J.S.A. 45:15-19.2. Furthermore, the Commission is expressly vested with the power to make and enforce any and all rules and regulations for the conduct of the real estate brokerage business, consistent with the provisions of the act. R.S. 45:15-17.
Any person who violates any provision of the act is subject to a monetary penalty and to commitment on failure to pay it. N.J.S.A. 45:15-23, 24.
The question, then, is whether a municipality can validly regulate a person engaged in soliciting door-to-door for the same business purposes for which he holds a license issued by a Commission of the State of New Jersey pursuant to Title 45 of the Revised Statutes, e.g., soliciting for real estate purposes while a validly licensed individual pursuant to N.J.S.A. 45:15-1 et seq.
The Real Estate Brokers and Salesmen Licensing Act is a regulatory measure and represents strong policy of the State. Tanenbaum v. Sylvan Builders, Inc., 29 N.J. 63 (1959).
Local ordinances ancillary to state enactments for the protection of the public health, safety and security, or without the pale encompassed by state control, have been upheld as a reasonable exercise of municipal police power for the protection of local inhabitants or to meet peculiar local police health *598 and safety situations. Chaiet v. East Orange, 136 N.J.L. 375 (Sup. Ct. 1948), Mills v. Mosher, 128 N.J.L. 546 (Sup. Ct. 1942); Spiro Drug Service, Inc. v. Bd. Commrs., Union City, 130 N.J.L. 1 (Sup. Ct. 1943).
The unknown solicitor has been held in disfavor because of his annoying methods of solicitation, financial irresponsibility growing out of his impermanent and temporary habits, and his propensity to defraud in the sale of his goods and to commit crimes collateral to his admittance to private homes. State v. Mauer, 75 N.J. Super. 90 (Cty. Ct. 1962). The act, N.J.S.A. 45:15-1 et seq., is very effective as a means to identify and eliminate any incompetent, unworthy and unscrupulous individuals who "solicit for real estate purposes" from that pursuit. Div. of the N.J. Real Estate Comm., etc. v. Ponsi, 39 N.J. Super. 526 (App. Div. 1956).
Here, the ordinance adds nothing to the statute's effectiveness. There are no additional regulations to aid and further the purpose of the general state law appropriate to the necessities of the Haddon Heights locality nor any local concern which may be determined to be peculiarly necessary and proper for the good and welfare of local inhabitants.
A municipality is empowerd, limited and controlled in the exercise of local government powers by the State Legislature. A municipality has no powers of self-government except those constitutionally reserved or delegated by the Legislature. Wagner v. Newark, 24 N.J. 467 (1957); In re Public Service Electric and Gas Co., 35 N.J. 358 (1961).
The Legislature has expressly reserved to municipalities the power to regulate real estate auctioneers or real estate brokers acting as such, N.J.S.A. 40:52-1(i), and expressly excluded the licensing power of municipalities from licensing or regulating any person holding a license or certificate issued by any department, board, commission or other agency of the State, N.J.S.A. 40:52-1.
In Galante v. Teaneck Dept. of Health, 70 N.J. Super. 362, at page 368 (Law Div. 1961), which the court feels is dispositive of the case at bar, the following is found:
*599 "* * * The broad grant of the police power to legislate in local matters affecting the public health, safety and welfare of its inhabitants under R.S. 40:48-2, N.J.S.A. and the liberal construction of such laws in favor of municipalities including express and necessarily implied powers inehrent therein as mandated by Article IV, Section VII, paragraph 11, of the Constitution of 1947, have been strictly limited to matters of local concern necessary and proper for the good and welfare of local inhabitants and are not applicable to those matters involving state policy or in the realm of affairs of general public interest, Fred v. Mayor and Council of Borough of Old Tappan, 10 N.J. 515 (1952); Wagner v. Mayor and Municipal Council of City of Newark, supra; Roselle v. Public Service Elec. & Gas Co., supra [35 N.J. 358]. A municipality must yield to the predominant power of the State where by state enactment covering the subject the Legislature has manifested the public policy of the State, its intent and purpose to exercise exclusive jurisdiction in the field in the interests of the people of the State as a whole. Wagner v. Mayor and Municipal Council of City of Newark, supra; Roselle v. Public Service Elec. & Gas Co., supra."
The court finds that the State has delegated complete and adequate control, regulation and supervision of real estate brokers and salesmen to the State Real Estate Commission and expressly reserving to municipalities only the regulation of real estate auctioneers or brokers acting as such. The State has pre-empted the field to the exclusion of municipal exercise of power or regulation or licensing in this field. From the broad, comprehensive scope of regulation and control provided in the Real Estate Brokers and Salesmen Licensing Act and from the qualifications of the members of the Real Estate Commission laid down in the act for enforcement of regulations, the court finds an expressed recognition by the Legislature that the public interest, safety and welfare require centralized state control entrusted to a state board specially qualified to control the occupation and protect public interest, transcending municipal lines and functioning on a statewide level, uniformly protecting the industry and the patrons throughout the State. Cf. Galante v. Teaneck Dept. of Health, supra, at p. 367.
It therefore follows that where the Legislature has, by appropriate legislation, assumed control of a state-wide occupation, industry or profession and all its functions under the *600 police power in the public interest for the safety, security and protection of its customers, patrons or clients, and delegated authority to a state board or agency to control, regulate and license the persons, so engaged by such pre-emption, a municipality is precluded from exercise of local control regulation or licensing, except to the extent reserved by the Legislature to the municipality in the act or by statutory enactments in pari materia. Galante v. Teaneck Dept. of Health, supra.
Dual licensing by a municipality and a state board of the same entities for the same functions or purposes would be inconsistent and in conflict with the primary exercise of such licensing power by the state board expressly authorized to license such functions within the scope of the regulatory act without reservation. Galante v. Teaneck Dept. of Health, supra; Tagmire v. Atlantic City, 35 N.J. Super. 11 (App. Div. 1955); Wagner v. Newark, supra; R.S. 40:48-2.
The defendants are acquitted. Prepare an appropriate judgment.